UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
PAUL DESIR,

                    Plaintiff,

          - against -                                        **MEMORANDUM AND ORDER**
                                                             07-CV-1994 (RRM)(ARL)

BOARD OF COOPERATIVE EDUCATIONAL
SERVICES (BOCES) NASSAU COUNTY,
JAMES D. MAPES, ROBERT LOMBARDI,
SANDRA TEDESCO, and JOHN GANGEMI,

                    Defendants.
-----------------------------------------------------------X
**MAUSKOPF, United States District Judge.**

          Plaintiff Paul Desir ("Plaintiff") brings this action against his former employer, Nassau

County Board of Cooperative Educational Services ("BOCES"), as well as certain school board

officials and school administrators in their official and individual capacities, including:  District

Superintendent James Mapes, Deputy Superintendent John Gangemi, Principal Robert Lombardi,

and Assistant Principal Sandra Tedesco.  Plaintiff alleges discrimination on the basis of race and

color in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title

VII"), New York State Executive Law § 296, and the federal constitution under 42 U.S.C. §

1983.  Currently before the Court is Defendant's motion for summary judgment pursuant to Rule

56 of the Federal Rules of Civil Procedure.  For the reasons stated below, Defendant's motion for

summary judgment is GRANTED in its entirety. [1]

---

[1] Because the Court grants summary judgment to Defendants on the merits of Plaintiff's Title VII, New York state
law, and § 1983 claims, it declines to address Defendants' alternative argument for summary judgment related to
qualified immunity.

The following facts are either undisputed or described in the light most favorable to the Plaintiff. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50 n.1 (2d Cir. 2001). Plaintiff, an African-American male, was hired as a Special Education teacher at Eagle Avenue Middle School in West Hempstead, New York, effective on or about September 1, 2005. (Def. 56.1 Stmt. (Doc. No. 37) ¶ 9.) As a first-year teacher, Plaintiff was subject to a probationary period and to the terms and conditions of a Collective Bargaining Agreement ("CBA") between BOCES and the Teachers' Union. Principal Robert Lombardi and Vice Principal Sandra Tedesco interviewed Plaintiff for the teaching position at issue, and recommended him for the probationary position.[3] (*See id.* ¶¶ 3-5.) Robert Mapes testified that he thought that he was the Superintendent at the time Plaintiff was hired. (*See id.* ¶¶ 6-7.) The Board, exercising its ultimate hiring authority, hired Plaintiff on a probationary basis. (*See id.* ¶¶ 8-9.) At the time Plaintiff was hired, a Caucasian teacher also applied for the job in question; the Caucasian applicant was instead hired for the position of "temporary teacher," a non-tenure-track position. (Pl. 56.1 Cntrstmt. (Doc. No. 41) ¶ 118.)

---

[2] Unless otherwise noted, citations to the parties' Rule 56.1 statements concern factual assertions that are admitted or are deemed admitted because they were not contradicted by citations to admissible evidence. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."). Plaintiff's 56.1 Statement in support of his Summary Judgment motion does not altogether comport with Local Civil Rule 56.1(b). For example, the Plaintiff's Statement is riddled with conclusions and opinions, rather than facts supported by admissible evidence as required. Moreover, in many cases Plaintiff simply states that he "does not recall" whether or not an event occurred or whether he received a document, though he does not deny the statement by the opposing party in question. Ordinarily, failure to comply with the Local Rules regarding 56.1 Statements would result in the material facts in the non-complying party's Statement being deemed admitted for the purposes of deciding the pending summary judgment motion. *See* Local Civil Rule 56.1(c). A district court, however, "has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Rateau v. City of N.Y.*, No. 06-CV-4751 (KAM)(CLP), 2009 U.S. Dist. LEXIS 90112, at *2 n.1 (E.D.N.Y. Sept. 29, 2009) (exercising discretion in reviewing the admissible record evidence in determining whether proposed undisputed facts were disputed); *Robinson v. Keyspan*, No. 03-CV-4796 (FB)(LB), 2005 U.S. Dist. LEXIS 27057, at *2 n.2 (E.D.N.Y. Nov. 9, 2005) (same). Accordingly, for the purposes of this motion, Defendant's statement of undisputed facts is treated as undisputed only where it is not controverted by admissible evidence in the record.

[3] Dr. John Gangemi met the Plaintiff on one occasion, either at a meeting with the union president or at a grievance proceeding. (Def. 56.1 Stmt. ¶ 38.)

On September 24, 2006, Plaintiff attended an orientation and signed a form acknowledging receipt of school policies and regulations. (Def. 56.1 Stmt. ¶ 10.)[4] In November 2005, Tedesco wrote Plaintiff a memo following an informal classroom observation, offering various recommendations for improvement, directing Defendant to consult with his mentor, and asking for a meeting at his convenience. (*Id.* ¶ 17.)[5] Also in November, a memo was sent to Plaintiff arranging for him to visit classrooms to view lessons. (*Id.* ¶ 18; Def. Decl. re: Mot. for Summ. J. (Doc. No. 38) ("Def. Decl."), Ex P.)[6] In December 2005, Plaintiff was admonished via memorandum by Lombardi for failing to leave plans for a substitute teacher in case of absence.[7] (Def. 56.1 Stmt. ¶ 19.) In January 2006, Tedesco again wrote Plaintiff a memo voicing concerns about his lesson plan and offering assistance. (*Id.* ¶ 20; Def. Decl. Ex R.)[8] On March 21, Lombardi issued a memo to Plaintiff regarding scoring errors in his standardized achievement test for Plaintiff's class. (*Id.* ¶ 25; Def. Decl. Ex. V.)[9]

Lombardi gave Plaintiff four "unsatisfactory" performance evaluations between February and April of 2006. Plaintiff's first evaluation took place over three days, culminating in a February 2, 2006 written evaluation.[10] According to Plaintiff's evaluation, Lombardi made several attempts to observe him. (*Id.* ¶ 21; Def. Decl. Ex. S.)[11] On January 31, 2006, only one student was in the classroom upon Principal Lombardi's arrival. (Pl. 56.1 Cntrstmt. ¶ 46; Def.

---

[4] Plaintiff "does not recall" whether he attended, though he did recognize his signature. (Pl. 56.1 Cntrstmt. ¶ 10.)
[5] Plaintiff "does not recall" whether or not he ever received these or whether a conversation took place on the subject. (*Id.* ¶ 17.)
[6] Plaintiff "does not recall" receiving this memo. (*Id.* ¶ 18.)
[7] Plaintiff "does not recall" receiving this memo but states that he did maintain proper sub-folders, including lesson plans. (*Id.* ¶ 19.)
[8] Plaintiff "does not recall receiving the memo." (*Id.* ¶ 20.)
[9] Plaintiff does not deny receiving the memo but states he "does not recall" whether he received the memo. (*Id.* ¶ 25.)
[10] Plaintiff "does not recall" having a post-conference meeting. (*Id.* ¶ 22.)
[11] Plaintiff "does not recall" receiving this evaluation. (*Id.* ¶ 21.) However, he also notes that he submitted a written response to the February 2, 2006 evaluation. (*Id.* ¶ 49.) He later concedes that he "probably received the first formative evaluation in the first week of February." (*Id.* ¶ 56.) Thus, the Court concludes he did in fact receive the memo.

56.1 Reply (Doc. No. 44) ¶ 46.)  Lombardi returned the following day to Plaintiff's absence from class for fifteen and ten minute blocs, during which the children were left to play games with no educational value and to surf the internet in an unsupervised manner, leading to the suspension of their internet privileges.  (Def. Decl. Ex. S.)  On February 2, 2006, Plaintiff arrived seventeen minutes after Lombardi arrived; students proceeded to watch a movie without supervision, including inappropriate sexual scenes.  (*Id*.)  Defendant contends that at a post-observation conference, memorialized in writing, Plaintiff indicated that he was talking to another teacher during his absences; however, Plaintiff maintains this post-observation meeting did not occur.  (Pl. 56.1 Cntrstmt. ¶ 21; Def. Decl. Ex S.)  Lombardi told Plaintiff to be ready for his next observation "within the next month."  (*Id.* ¶ 57; Def. Decl. Ex. S.)

Plaintiff's second evaluation took place February 27 and 28, 2006, culminating in a March 6, 2006 written evaluation.  (*Id.* ¶ 58; Def. 56.1 Stmt. ¶ 23.)  No pre-observation conference was held.  (Pl. 56.1 Cntrstmt. ¶ 59; Def. 56.1 Reply ¶ 59.)  The evaluation related several deficiencies with Plaintiff's teaching:  there was too much free time; too much math and not enough social studies, science, or language arts; no evidence of a prepared lesson; and the math lesson itself was unsatisfactory.  (Def. Decl. Ex U.)  It suggested that Plaintiff have his weekly lessons planned ahead of time before meeting with his mentor on Tuesdays at 10:30 a.m.  (*See id.*)  Though Plaintiff did not object to these criticisms, he objected to what he perceived to be the lack of constructive criticism therein.  (Pl. 56.1 Cntrstmt. ¶¶ 63-65.)  A post-observation conference was held, which also served as a pre-observation conference for the next evaluation.  (Def. 56.1 Stmt. ¶ 26; Pl. 56.1 Cntrstmt. ¶ 26.)

Plaintiff's third evaluation took place on March 29, 2006.  (Def. 56.1 Stmt. ¶ 26.)  Again, it noted several deficiencies:  Plaintiff misinformed the students as to the definition of an index

and appendix; there were no activities to test vocabulary; his Plan Book was disorganized and out of date; and his disciplinary methods were not effective. (Def. Decl. Ex. W) Plaintiff filed a grievance objecting to the fact that, in his opinion, the review was not constructive and was improper due to its timing.

Plaintiff's fourth evaluation took place one day later, on March 30, 2006. (Pl. 56.1 Cntrstmt. ¶ 70; Def. Decl. Ex. X.) Again, Lombardi noted deficiencies in Plaintiff's teaching: the lesson was disorganized and disjointed, with no identification of a lesson plan; the students appeared to have difficulty following the lesson; and the lesson did not demonstrate new learning or skills. (*Id.*) Plaintiff contends that procedural irregularities characterizing the manner in which he was evaluated support his claim that Defendants were animated by racial discrimination in their treatment of Plaintiff.

Several classroom incidents have also been set forth by the Plaintiff in support of his claim for racial discrimination. First, of the approximately six students in his class, there was only one Caucasian student, who was removed from the classroom. (Pl. 56.1 Cntrstmt. ¶¶ 29-32.) Second, his class roster fluctuated above the number permitted by law. (Pl. 56.1 Cntrstmt. ¶¶ 27-28.) Third, at least one of the students in Plaintiff's class used a racial epithet in addressing him; Plaintiff alleges that he informed Lombardi and Tedesco of this fact but that no action was taken. (*Id.* ¶¶ 109-10.) Fourth, he alleges his grievances were ignored, his requests for assistance and for conferences were "usually ignored," he was not allowed to see his personnel file, and he was not given a performance plan. (*Id.* ¶¶ 85, 88, 92, 105.) Fifth, Lombardi denied Plaintiff's request to conference with his mentor during class. (*Id.* ¶¶ 80, 86;

Def. 56.1 Reply ¶ 86.)  Sixth, Plaintiff describes a scenario in which his students were forced to shelve books in the library and "do other menial work."[12]  (Pl. 56.1 Cntrstmt. ¶ 111.)

On April 3, 2006, Plaintiff was advised that, effective July 1, 2006, his employment would be terminated.  (*Id*. ¶ 28.)  On or about May 24, 2006, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR").  (Def. 56.1 Stmt. ¶ 33.)  On May 26, 2006, Executive Director Russell Riggio issued a letter to Plaintiff regarding a scheduled meeting to discuss an attendance issue; however, the proceedings were not completed because Plaintiff insisted on taping the conversation.  (*Id*. ¶ 34.)

Plaintiff received an Unsatisfactory rating on his Summative Evaluation on May 30, 2006.  (*Id*. 56.1 ¶ 35.)  Plaintiff's June 6, 2006 meeting with Assistant Director of Human Resources Jeffrey Drucker was not completed because Plaintiff refused to confirm or deny whether he had a tape recorder in his possession.  (Pl. 56.1 Cntrstmt. ¶ 36.)  Drucker subsequently issued Plaintiff a letter, dated June 12, 2006, informing him that "[e]ffective June 13, 2006, you are administratively reassigned to your home.  Effective June 13, 2006, you are not to be on any Nassau BOCES property unless directed by me."  (*Id*. ¶ 37.)  Lombardi testified that he was not aware of any person employed by BOCES administratively reassigned to their home during the school year.  (Def. 56.1 Stmt. ¶ 102)  A white woman eventually was hired as a probationary teacher.  (Def. 56.1 Reply ¶ 114.)

On March 23, 2007, NYSDHR issued a Determination and Order of Dismissal for Administrative Convenience dismissing Plaintiff's complaint because he intended to pursue the matter in federal court.  On May 15, 2007, Plaintiff commenced the instant action.  On September 29, 2008, this Court granted Defendant's motion to dismiss with respect to Plaintiff's

---

[12] Defendants concede this was so, but testified that other classes do such work as well.  (Def. Decl. Ex. D ("Lombardi Tr."), 217-218.)

§ 1983 substantive and procedural due process claims; his § 1983 claim for money damages against individual defendants in their official capacities; and Plaintiff's claim under New York Executive Law § 297. Defendants moved for summary judgment as to the remainder of the claims on June 18, 2010.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a summary judgment motion, a district court must draw all reasonable inferences in favor of the nonmoving party. *See id.* at 249 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)); *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). The court must not "weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)). Any evidence in the record of any material fact from which an inference could be drawn in favor of the non-moving party precludes summary judgment. *See Castle Rock Entm't*, 150 F.3d at 137.

Once the movant has demonstrated that no genuine issue of material fact exists, then "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue*

for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). However, there must exist more than mere "metaphysical doubt as to the material facts" to defeat a summary judgment motion. *Id.* at 586. Instead, the non-moving party must present "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Only disputes over material facts "that might affect the outcome of the suit under the governing law" will properly preclude the entry of summary judgment. *Id.* at 248; *see also Matsushita*, 475 U.S. at 586.

Courts are obliged to exercise particular caution in determining whether to grant summary judgment, because direct evidence of an employer's discriminatory intent is rare and "must often be inferred from circumstantial evidence." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (quotation marks and citation omitted); *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). However, a plaintiff cannot defeat a summary judgment motion simply by presenting "conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Ragusa v. Malverne Union Free Sch. Dist.*, 582 F. Supp. 2d 326, 339 (E.D.N.Y. 2008) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)); *see also Scwapp*, 118 F.3d at 110.

## DISCUSSION

### I. TITLE VII

Plaintiff alleges that BOCES discriminated against him by terminating him on the basis of race. *See* 42 U.S.C. §2000e-2(a). Title VII provides that it is an "unlawful employment

practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). Thus, "[a]n employment decision . . . violates Title VII when it is based in whole or in part on discrimination." *Holcomb*, 521 F.3d at 137 (citation omitted).

Courts analyze employment discrimination claims brought under Title VII by using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). First, a plaintiff must establish a *prima facie* case of discrimination by demonstrating that: "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010). The plaintiff's burden in presenting evidence to support a *prima facie* case of discrimination is "*de minimis.*" *Sassaman v. Gamache*, 566 F.3d 307, 312 (2d Cir. 2009) (citation omitted).

If the plaintiff succeeds in satisfying his initial burden, then "a presumption of discrimination arises and the burden shifts to the defendant, who must proffer some legitimate, nondiscriminatory reason for the adverse action." *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010). If the defendant can offer such a reason, defendant "will be entitled to summary judgment unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *Id.* (citation omitted). The plaintiff may show, for example, that the defendant's apparently legitimate reasons were pretextual, or that the defendant's proffered reason was not the sole reason and unlawful discrimination was at least a "motivating factor[]."

*Holcomb*, 521 F.3d at 138 (citation omitted).  Plaintiff at all times bears the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009) (citation omitted).

Defendants argue that summary judgment is appropriate because Plaintiff has failed to raise an inference of racial discrimination necessary to establish the fourth element of the *prima facie* case. [13] Alternatively, Defendants argue that summary judgment is appropriate because Defendants have set forth legitimate, non-discriminatory reasons for the alleged adverse employment actions and Plaintiff cannot show that these reasons are pretextual.

For the reasons set forth below, Defendant's motion for summary judgment is GRANTED.

### A.  Inference of Discrimination

Defendants contend that much of the evidence proffered by Plaintiff is speculative, conclusory, based on his own self-serving deposition testimony, and otherwise fails to corroborate his claim that his termination was racially motivated.  As a preliminary matter, this Court notes that much of Plaintiff's proffered evidence is indeed based on speculation, hearsay, self-serving deposition testimony, and naked denials.  Plaintiff interposes this against Defendant's proffered written evidence – in the form of written evaluations, emails, and memoranda – and testimonial evidence taken by deposition as to various issues of fact.  In response to much of this evidence, Plaintiff simply responds that he "does not recall" the documents or incidents in question; however, he neither denies the incidents or documents in

---

[13] The parties do not dispute that Plaintiff is a member of a protected class, that he was at least minimally qualified for the employment at issue, and that he suffered an adverse employment action when he was terminated.  Thus, Plaintiff satisfies the first, second, and third prongs of the *prima facie* showing required by *McDonnell Douglas*.

question, nor provides any evidence to rebut either Defendant's sworn testimony or the submitted contemporaneous documents.  (*See, e.g.*, Pl. 56.1 Cntrstmt. ¶¶ 10, 17-22, 25, 49, 56.)

Generally, a plaintiff's naked assertion against sworn testimony "does not raise a genuine issue of material fact; rather it pits sworn testimony against speculation, conjecture and self-serving conclusions."  *Ghirardelli v. McAvey Sales & Serv., Inc.*, 287 F. Supp. 2d 379, 391 (S.D.N.Y. 2003); *see also Lawton v. Alitalia-Linee Aeree Italiane-Societa*, No. 97-CV-4472, 1999 WL 632846 (THK), at *5 (S.D.N.Y. Aug.18, 1999) ("speculation . . . cannot serve to contradict the sworn testimony of the witnesses . . . [and] is not enough to create a genuine issue of material fact").  Moreover, "[s]peculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact.  To avoid summary judgment, enough evidence must favor the nonmoving party's case such that a jury could return a verdict in its favor."  *Greenblatt v. Prescription Plan Servs. Corp.*, 783 F. Supp. 814, 819-20 (S.D.N.Y. 1992) (citations omitted); *Abbey v. 3F Therapeutics, Inc.*, No. 06-CV-409 (KMW), 2011 WL 651416, *7 (S.D.N.Y. Feb. 22, 2011) (noting that summary judgment will not be defeated by "mere denials or unsupported alternative explanations of [the party's] conduct.").

Of course, as it must on a motion for summary judgment, this Court draws all reasonable factual inferences in favor of the non-moving party, and is "alert to the fact that employers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law."  *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999); *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 464-65 (2d Cir. 1989).  However, only evidence "that allows for a reasonable inference of discrimination," not merely that which "gives rise to speculation and conjecture" fulfils the Plaintiff's burden.  *Bickerstaff*, 196 F.3d at 448. With this in mind, the Court turns to the Plaintiff's evidence purporting to show a nexus between

race and termination. Taking all of it together in the light most favorable to Plaintiff, Desir has

failed to establish an inference of discrimination sufficient to support a claim of discrimination.

## 1. Procedural Irregularities

First, Plaintiff points to procedural irregularities in the evaluation process in an attempt to

show a nexus between race and the termination at issue.  It is clear that Defendant did not abide

by at least some of the policies set forth in the CBA.  Specifically, Defendant did not adhere to

the CBA policies with respect to Plaintiff's truncated review schedule, the lack of certain pre-

and post-evaluation meetings, the length of some of the evaluations, the availability of his

personnel file for his own examination, and the administration's responsiveness regarding

grievance procedures.  (Pl. 56.1 Cntrstmt. ¶ 59, 71, 105; Def. 56.1 Stmt. ¶ 63; Pl. Decl. Ex. 6.)

In certain circumstances, procedural irregularities may form a basis to infer

discriminatory animus or pretext.  *See Stern v. Trustees of Columbia Univ. in the City of N.Y.*,

131 F.3d 305, 313 (2d Cir. 1997); *Zahorik v. Cornell Univ.*, 729 F.2d 85, 93 (2d Cir. 1984)

("Departures from procedural regularity . . . can raise a question as to the good faith of the

process where the departure may reasonably affect the decision"); *Blackstock v. Champlain

Enters.*, 03-CV-3448, 2004 WL 1616361, at *5 (S.D.N.Y. July 19, 2004) (procedural irregularity

may support an inference of discrimination in some contexts).  However, departures from

established procedure do not show, without more, that an employer was animated by racial

discrimination.  *See, e.g., Gibbs v. Consol. Edison Co.*, 714 F. Supp. 85, 92 (S.D.N.Y. 1989)

("While [defendant's] actions may violate the collective bargaining agreement and may treat

plaintiff in an unfair manner, nothing before the Court indicates that race . . . had anything to do

with the [adverse employment] decision.").  "[A] a contract violation standing alone does not

indicate racial animus, motive or intent.  Plaintiff retains the ultimate burden of proving

discriminatory intent." *Id.* (citing *Richards v. N.Y. Bd. of Educ.*, 668 F. Supp. 259, 264 (S.D.N.Y. 1987), *aff'd mem.*, 842 F.2d 1288 (2d Cir. 1988).

The evidence predominantly consists of Plaintiff's own testimony that he did not deserve the evaluations he received, that he "did not recall" receiving memoranda proffered by the Defendant, and his conviction that the procedural irregularities were designed to stymie his progress because of his race. "Although mistreatment by defendants is not irrelevant in assessing the strength of plaintiffs' circumstantial evidence of race-based animus, it is certainly not sufficient to establish it. We can envision many circumstances where markedly hostile treatment . . . would raise no inference of racial animus . . . ." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 102 (2d Cir. 2001) (citation omitted). Federal employment discrimination laws do not "make employers liable for doing stupid or even wicked things; it makes them liable for discriminating . . . ." *Norton v. Sam's Club*, 145 F.3d 114, 120 (2d Cir. 1998) (discussing age discrimination). Indeed, "[i]ndividual decision-makers may intentionally dissemble in order to hide a reason that is non-discriminatory but unbecoming or small-minded, such as back-scratching, log-rolling, horse-trading, institutional politics, envy, nepotism, spite, or personal hostility." *Fisher v. Vasser Coll.*, 114 F.3d 1332, 1337 (2d Cir. 1997), *abrogated by Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000).

Plaintiff here simply "cite[s] to [his] mistreatment and ask[s] the court to conclude that it must have been related to [his] race." *Id*. at 104. This is insufficient to show a connection between his race and the adverse action. Reviewing the record as a whole in the light most favorable to Plaintiff, and considering the totality of the circumstances, *see Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d 426, 436 (2d Cir. 1999), the evidence is insufficient to show any nexus between race and termination, and certainly not to "permit a rational fact finder

to infer that the discharge was actually motivated, in whole or in part, by discrimination. . . ."

*Grady v. Affiliated Cent.*, 130 F.3d 553, 561 (2d Cir. 1997).

## 2.  Alleged Racially-Charged Remarks

Coupled with these procedural irregularities are Plaintiff's allegations of alleged racially-charged remarks on which Plaintiff attempts to rely to raise an inference of discrimination. However, as discussed in detail below, these allegations are either wholly unsupported by admissible evidence, or fail for a variety of reasons to raise even the spectre of discriminatory animus.

### a.  Inadmissible Hearsay

Plaintiff alleges a plethora of statements attributing racial animus to Defendants on the basis of uncorroborated statements. [14]  He alleges, for example, that he "spoke to many teachers and they told him that before he was hired, there was an African-American female who worked in plaintiff's position who experienced many of the same things that plaintiff experienced." (Def. 56.1 Stmt. ¶ 94.)  Plaintiff neither identifies the teachers with whom he spoke, nor describes the communication in question.  Nor does he provide any corroborative evidence, for example, in the form of affidavits or deposition testimony from others, to suggest that these

---

[14] These include the following: "Plaintiff spoke to many teachers and they told him that before he was hired, there was an African-American female who worked in plaintiff's position who experienced many of the same things that plaintiff experienced." (Pl. 56.1 Cntrstmt. ¶ 94, citing own deposition testimony); "Other teachers believed that defendant Lombardi treated African-American educators differently than Caucasians." (*Id.* ¶ 95, citing own deposition testimony);  "Other non-teacher African-Americans employed at Eagle Avenue Middle School told plaintiff that they had similar experiences with defendants – where they were not treated fairly with regard to observations, work assignments and resources." (*Id.* ¶ 96); "Plaintiff had conversations with other teachers who told him that they had never seen such negative and non-constructive evaluations as the ones he received." (*Id.* ¶ 97); "Plaintiff had communications with other teachers who told him that they had never before seen defendants not respond to properly filed grievances." (*Id.* ¶ 98); "[Plaintiff] also spoke to the other African-American teacher, Michael McDonald, who, although having received tenure, told plaintiff that he went through similar experiences" (Pl. 56.1 Cntrstmt. ¶ 99);  "Other African-Americans who were employed at Eagle Avenue Middle School told plaintiff that defendants Lombardi and Tedesco had made comments about his race." (*Id.* ¶ 106); "[Other African-Americans at Eagle Avenue Middle School] told plaintiff that defendants have said that African-American[s] were 'difficult.'" (*Id.*¶ 107); "An African-American employee told plaintiff that defendant Lombardi had criticized plaintiff in racial terms." (*Id.* ¶ 108.)

14

statements were made or even heard. Self-serving testimony solely from Plaintiff about what an unnamed employee told him is hearsay and thus inadmissible. *See* Fed.R.Civ.P. 56(e)(1) (stating that affidavit opposing summary judgment "must be made on personal knowledge, set[ting] out facts that would be admissible in evidence"); *see also Howley v. Town of Stratford*, 217 F.3d 141, 155 (2d Cir. 2000) (plaintiff's testimony, in Title VII case, of co-workers' alleged statements made by her supervisor were inadmissible for the fact that they were made, since the testimony was not based on personal knowledge); *Taylor v. Potter*, No. 99-CV-4941 (AJP), 2004 WL 1811423, at *17 (S.D.N.Y. Aug. 16, 2004). "It is appropriate for a district court ruling on summary judgment to consider only admissible evidence." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123 (2d Cir. 2001). Thus, the Court declines to consider this evidence in evaluating Plaintiff's claims.

### b. Use of Racial Epithets by Students

Plaintiff also alleges that, Principal Lombardi and Assistant Principal Tedesco's failure to intervene when told that students in his Special Education class used racial epithets shows discriminatory animus.[15] This proffered evidence also fails to give rise to an inference of discrimination.

First, a plaintiff's subjectively held belief that comments are discriminatory is insufficient to support an inference of discrimination. *See Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir. 1997). Second, and most important here, by Plaintiff's own admission, these remarks were devoid of racial animus. Indeed, he testified that he told the administration: "I know that they may be speaking in the street vernacular, or maybe not, but in any case it is a form of disrespect." (Desir Tr. 125.) Plaintiff testified that Lombardi and Tedesco, in response, told

---

[15] Plaintiff's 56.1 statement describes: "Plaintiff's students used racial epithets. They would use the word "nigger." They would say, for example, 'Hey, Mr. D, you're my nigger. Plaintiff complained to defendants Lombardi and Tedesco, who condoned the remarks and did nothing." (Pl. 56.1 Cntrstmt. ¶¶ 109-10.)

Plaintiff "that's just how kids talk and [Plaintiff was] making too big of a deal out of it" and did not stop the students. (*Id*. at 126.) Thus, Plaintiff himself appears to be unconvinced that these remarks conveyed racial animus.

Moreover, even if these comments could be viewed objectively as evidence of racial animus, they were not made by anyone associated with the decision to terminate Plaintiff; they were made by children in his classroom, *see Haskell v. Kaman Corp.*, 743 F.2d 113, 120 (2d Cir. 1984) ("Stray remarks by non-decision-makers . . . are rarely given great weight . . ."), and even stray comments by a decision-maker will not support a Title VII discrimination suit. *Danzer v. Norden*, 151 F.3d 50, 56 (2d Cir. 1998). Plaintiff must then proffer enough evidence such that "the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear a more ominous significance." *Danzer*, 151 F.3d at 56.

### c.  Comments and Actions Related to Students' Limited Skills

Plaintiff also alleges that Principal Lombardi showed racial animus by 1) requiring Plaintiff's students to do menial work in the library and 2) making statements concerning his students limited skills and abilities. In this regard, Plaintiff alleges that Lombardi wanted the students to develop manual skills because "college was not a realistic goal." (Pl. 56.1 Cntrstmt. ¶ 111.) Principal Lombardi claims that he told the Plaintiff that he needed to alter the curriculum to "make the curriculum more relative to the kids and one of the approaches was to give them practical experience." (Def. 56.1 Reply ¶ 111; Lombardi Tr. 216.) These claims must be rejected as well. First, it is undisputed that other classes were also asked to do manual and menial work in the library as well. (Lombardi Tr. 217-18.) Moreover, even taking as true Plaintiff's claim that Lombardi told Plaintiff that college was not a realistic goal for the students in Plaintiff's special education class, there is nothing inherently racial about this comment or

about assigning students to work in the library. Given that the Court has little more than the Plaintiff's own subjective assertion that these comments and actions were motivated by racial animus, it cannot properly connect these actions to improper racial discrimination. *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (conclusory allegations of discrimination insufficient to survive summary judgment motion). Thus, no reasonable jury could infer from these comments or actions any racial animus or discrimination, even in satisfaction of the most *de minimis* of burdens.

### 3. Administrative Decisions with Regard to Class Size and Composition

Plaintiff alleges that, of the six students in his class, the only Caucasian student was removed, leaving him with only African-American and Hispanic students, while other classrooms were "diverse." (Pl. 56.1 Cntrstmt. ¶¶ 29-32; 34.) Plaintiff has not disputed the fact that his teaching team itself requested that the student be removed, because the student in question was not advanced enough to be in the class. (Lombardi Tr. 86-92.) Thus, this administrative decision does not suggest racial discrimination, and certainly does not rise to the level of proof necessary to meet Plaintiff's burden.

### 4. Similarly Situated Comparators

Plaintiff's allegations that other teachers similarly situated to him were treated more favorably than he is unsupported by the record. To prove that the employer subjected a plaintiff to disparate treatment, "that is, treated him less favorably than a similarly situated employee outside his protected group," the plaintiff must show he "was similarly situated in all material respects to the individuals with whom [he] seeks to compare [him]self." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (citation omitted). "Although the ultimate burden in making a prima facie case is slight, the issue of whether fellow employees are similarly situated is

somewhat strict." *Lanzo v. City of N.Y.*, No. 96-CV-3242 (ILG), 2000 WL 804628, at *6 (E.D.N.Y. May 18, 2000). The other employee "must have engaged in conduct similar to the plaintiff's without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it." *Id.* (internal citation and quotation omitted).

Though Plaintiff generally contends that similarly situated individuals outside of his protected class were treated more favorably than he, Plaintiff has provided no detail about these employees, and thus cannot establish that they were similarly situated.[16] A similarly situated employee must be "subject to the same standards governing performance evaluation and discipline" and must have "engaged in conduct similar to the plaintiff's." *Mazzella v. RCA Global Commc'ns, Inc.*, 642 F. Supp. 1531, 1549 (S.D.N.Y. 1986), *aff'd*, 814 F.2d 653 (2d Cir. 1987).

A plaintiff must at least "provide 'an objectively identifiable basis for comparability' between h[im]self and other employees." *Goldman v. Admin. for Children's Servs.*, No. 04 Civ. 7890 (GEL), 2007 WL 1552397, at *7 (S.D.N.Y. May 29, 2007) (citation omitted). Conclusory statements that "similarly situated" employees outside the protected class were treated more favorably are insufficient to defeat summary judgment. *See Chan v. NYU Downtown Hosp.*, 2006 WL 345853, at *5-6 (S.D.N.Y. Feb. 14, 2006) (statements that Caucasian employees were treated differently were insufficient to make out prima facie case of race discrimination because plaintiff did not "identify any similarly situated individuals outside her protected class who were treated preferentially"); *Abato v. N.Y. City Off-Track Betting Corp.*, No. 03 Civ. 5849 (LTS), 2007 WL 1659197, at *6 (S.D.N.Y. June 7, 2007) (conclusory statements that "similarly situated

---

[16] "Ordinarily, the question whether two employees are similarly situated is a question of fact for the jury." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). "This rule is not absolute, however, and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001).

younger women" were treated differently, in the absence of any "specific information" concerning those individuals, were "insufficient to present a genuine issue of material fact").

### 5. Termination

Plaintiff attempts to assert that racial animus can be inferred from the fact that the Superintendent at the time of his termination, Robert Mapes, was white, while he believes the Superintendent who hired him was black. Again, in support of this claim, Plaintiff puts forth nothing but his own self-serving, vague testimony in which he speculates, without any precise recollection or support, that the Superintendent at the time might have been black. This conclusory allegation is not sufficient to raise a genuine issue of material fact, particularly in light of the testimony by Robert Mapes in which he plainly asserts that he was, in fact, Superintendent at the time Plaintiff was hired. Moreover, even if it were the case that he was hired and fired by superintendents of different races, that fact alone is insufficient to show a sufficient nexus between race and termination. Though at least one court has found that termination by a white superintendent and a majority-white board are sufficient for a *prima facie* case of discrimination, this was only held to be sufficient given other evidence of discrimination. *See Tilghman v. Waterbury Bd. of Educ.*, 312 F. Supp. 2d 185, 189 (D. Conn. 2004).

Indeed, Defendant's reliance on the "same actor defense" though not dispositive, is persuasive here. The Second Circuit has held that "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [that person] an invidious motivation that would be inconsistent with the decision to hire." *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997). Further, Plaintiff's hiring and firing occurred within one year of each other; an inference of discrimination is unlikely "when the firing has occurred only a short time after the hiring." *Id.* at 560. Though Lombardi and Tedesco did not

solely make the decision to hire or fire Plaintiff, both had significant influence in the decision to hire and to terminate Plaintiff.  Indeed, Lombardi conducted the performance reviews that ultimately led to the Plaintiff's termination.  *Hauptman v. Concord Fabrics, Inc.*, No. 98 Civ. 1380 (LBS), 1999 WL 527970, at *6 (S.D.N.Y. Jul. 22, 1999) (granting summary judgment to employer where employee was hired and terminated by the same supervisor, and where that supervisor had authorized a salary and benefits increase for employee just two-and-a-half years prior to his termination).  The "same actor" thus weighs against Plaintiff's claim that Defendant's actions were motivated by racial animus, given the lack of other evidence pointing to Defendant's alleged discrimination.[17]

Plaintiff also attempts raise an inference of discrimination surrounding his termination from the fact that he was replaced by someone outside of his protected class.[18]  (Pl. 56.1 Cntrstmt. ¶ 114.)  *See D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 195 (2d Cir. 2007); *Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001); *De la Cruz v. N.Y. City Human Resources Admin. Dep't of Social Serv.*, 82 F.3d 16, 20 (2d Cir. 1996).  Though sufficient for the *de minimis* standard of the *prima facie* stage, this, without more, is insufficient to show support a finding by a jury that the Defendant's explanation for the termination is false. *See Tilghman*, 312 at 189.

### B.  Defendants' Legitimate Non-Discriminatory Reasons

Against Plaintiff's claims, Defendant has clearly carried its burden of demonstrating legitimate, nondiscriminatory reasons for Plaintiff's termination, satisfying the second prong of

---

[17] In *Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000), the plaintiff had "failed to offer any evidence that he was subjected to any [discriminatory] comments or criticisms on the job." *Id.* at 91.  As in this case, Plaintiff has not shown that he was subjected to any race-related comment or criticism.  Thus this case is similar to *Anderson v. Hertz Corp.*, 507 F. Supp. 2d 320 (S.D.N.Y. 2007), in which the district court invoked the noted that there was "no evidence of racial remarks by . . . the two managers most directly involved in the hiring and firing of the Plaintiff." *Id.* at 328.
[18] Whether a white woman was hired to actually replace Plaintiff, the time frame in which this occurred, and other particulars are completely absent from the record and from Plaintiff's submissions.

the *McDonnell Douglas* framework.  The defendant's burden is "one of production, not persuasion."  *Reeves*, 530 U.S. at 142.  At this stage, the court is not to pass judgment on the soundness or credibility of the reasons offered by defendants, so long as the reasons given are "clear and specific."  *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 381 (2d Cir. 2003) (citation omitted).

Defendant has shown that Plaintiff's unsatisfactory rating was based on four unsatisfactory lesson evaluations.  (*See* Def. Decl. Exs. S, U, W, X.)  Without echoing every reason for the unsatisfactory ratings, the Court notes that the comments given by the Principal and Vice Principal were well within the ambit of legitimacy; for example, they cited such issues as absenteeism and tardiness by Plaintiff, playing games with no educational value, students using an unauthorized website indicating a lack of supervision on the part of Plaintiff, Plaintiff's use of a potentially inappropriate film, excessive allowance of free time, a lack of a prepared lesson, and a failure to use math manipulatives and art supplies.  (*See id*.)  Indeed, unless performance standards are set in bad faith, Plaintiff's subjective disagreement with these standards is irrelevant to his discrimination case.  *See Thornley v. Penton Publ'g*, 104 F.3d 26, 29 (2d Cir. 1997).  Plaintiff does not dispute these absences or the lack of supervision evidenced thereby; rather, he objects to the lack of constructive criticism in the evaluations and explains his absences.  (Pl. 56.1 Cntrstmt. ¶¶ 63-65.)  Defendant further points to the problems with teaching Plaintiff had prior to the formal evaluations (*see* Def. 56.1 Stmt ¶¶ 17, 20), and to issues related to scoring errors made by Plaintiff.  (*Id*. ¶ 25; Def. Decl. Ex. V.)[19]

Thus, Defendant has shown that it had legitimate, non-discriminatory reasons for terminating Plaintiff based on his four unsatisfactory lessons throughout the 2005-2006 school

---

[19] Plaintiff does not deny receiving the memo but states he "does not recall" whether he received the memo.  (*Id*. ¶ 25.)

year.  *See Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 93 (2d Cir. 2001) (finding that employer "easily met its burden of demonstrating a legitimate, non-discriminatory reason for its actions" through documentation of dissatisfaction with the employee's performance).

### C.  Pretext

The Court finds that Plaintiff has not created a material issue of fact as to whether Defendant's reason for terminating him was a pretext for discrimination.  In light of Defendants' legitimate nondiscriminatory reason for firing Plaintiff, the *McDonnell Douglas* presumptions "disappear from the case."  *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000).  The final burden falls on Plaintiff to offer "sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence" that unlawful discrimination caused the adverse employment action.  *Gorzynski*, 596 F.3d at 107.

The crucial inquiry is whether the Plaintiff has proffered sufficient evidence from which a reasonable trier of fact could find in his favor on the ultimate issue.  *James*, 233 F.3d at 153-54.  The record must support an inference of discrimination.  *Id*.  The Court must examine "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports or undermines the employer's case."  *Id.* (internal quotation marks and alterations omitted).

Plaintiff has proffered no reasons for why Defendants' non-discriminatory reasons were false.  Moreover, as discussed at length, *supra*, the admissible evidence on which Plaintiff relies fails to raise any inference of discrimination.  This Court has considered all the evidence in the record, and has granted Plaintiff all of the inferences to which he is entitled.  Plaintiff has failed to proffer sufficient evidence to support a finding that he was terminated for discriminatory

reasons.  For these reasons, Defendant's motion for summary judgment is GRANTED with respect to Plaintiff's Title VII racial discrimination claim.

## II.    N.Y. EXECUTIVE LAW § 296

Discrimination claims pursuant to New York state law are evaluated under the same burden-shifting analysis as that utilized by courts evaluating Title VII claims.  *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 n.4 (2d Cir. 1995); *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1046 (2d Cir. 1992); *McCoy v. City of N.Y.*, 131 F. Supp. 2d 363, 375-76 (E.D.N.Y. 2001).  This Court, in keeping with the usual practice of this Circuit, will treat Plaintiff's Title VII and New York State Human Rights Law claims "as analytically identical, applying the same standard of proof to both claims."  *Dauer v. Verizon Commc'ns, Inc.*, 613 F. Supp. 2d 446 (S.D.N.Y. 2009) (quoting *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n. 9 (2d Cir. 2008).

As explained, *supra*, Plaintiff has not shown that a reasonable jury could find in his favor here.[20]  Thus Plaintiff's claim based on N.Y. Exec. Law § 296 is DISMISSED.

## III.    42 U.S.C. § 1983

Title 42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

*Id*.  Thus, § 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.  *Annis v. Cnty. of Westchester, N.Y.*, 36 F.3d 251, 254 (2d Cir. 1994) (citation omitted).

---

[20] Indeed, Plaintiff has asserted absolutely no evidence of discrimination with regard to individual defendants Mapes and Gangemi.

The Second Circuit has held that racial discrimination may be actionable under § 1983 as an equal protection violation in the public employment context. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). A § 1983 equal protection claim against individuals ultimately parallels a Title VII claim against the State once action under the color of state law is established. *See Feingold v. N.Y.*, 366 F.3d 138, 159 n.20 (2d Cir. 2004) ("the two must stand or fall together"). Thus the *McDonnell Douglas* burden-shifting framework utilized in Title VII cases must also be used to analyze Plaintiff's § 1983 equal protection claim against individual Defendants.

Plaintiff must show that (a) he was selectively treated compared to others similarly situated and (b) that the selective treatment was based on impermissible considerations – here, race. *See Latriest Rest. v. Vill. of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999). As explained, *supra*, Plaintiff has not shown either of these elements. Thus, Plaintiff's claim based on § 1983 fails as a matter of law and is therefore DISMISSED.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment on the pleadings [Doc. No. 36] is GRANTED, and the Complaint is DISMISSED. The Clerk of Court is directed to enter judgment accordingly, and to close this case.


SO ORDERED.


Dated: Brooklyn, New York          /S/
      March  29, 2011          _____
                                    ROSLYNN R. MAUSKOPF
                                    United States District Judge